No. 91-209

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FARMERS UNION MUTUAL INSURANCE COMPANY,
a Montana Corporation,

Plaintiff and Appellant,

v.

DOUGLAS BLAIR, DEBRA BLAIR, DAVID BLAIR,
and TROY OSBURN,

Defendants and Respondents.

FILED

SEP 24 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the county of Flathead,
               The Honorable Michael H. Keedy, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                James M. Ramlow, Murray & Kaufman; Kalispell,
                Montana

        For Respondent:

                Jeffrey D. Ellingson, Ellingson Law Offices:
                Kalispell, Montana


                        Submitted on briefs:  August 1, 1991

                                  Decided:  September 24, 1991

Filed:

_____
                Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

In a declaratory action, the District Court of the Eleventh Judicial District, Flathead County, determined that Farmers Union Mutual Insurance Company (Farmers Union) had a duty to defend and indemnify David Blair (Blair), the named insured's son, in an underlying negligence action between Blair and Troy Osburn (Osburn), the injured party. Farmers Union appeals this decision. We affirm.

The issues raised for our review are restated as follows:

1. Was the District Court correct in finding that David Blair (Blair) was a resident of his parents' household?

2. Was the District Court correct in declaring that the policy's automobile exclusion did not apply to the underlying negligence action?

The following facts are not in dispute. On March 6, 1989, Mitchell Klindt (Klindt) accidentally shot Osburn with Blair's gun while attending a party at a Kalispell residence. The night of the shooting, Blair drove Klindt and another friend from one house party to another in his employer's car. Blair had his loaded revolver in an unlocked compartment of the car. Prior to the shooting, Blair and Klindt were asleep in the car outside the residence where the shooting occurred. Klindt awoke, removed Blair's gun from the car, placed the gun in his pants and went inside the residence. Once inside the house, Klindt accidentally shot Osburn while removing the revolver from his pants.

In the underlying negligence action, Osburn filed suit against

Blair alleging that Blair proximately caused his injury by negligently providing Klindt access to alcohol and a loaded handgun. Farmers Union filed this declaratory action to determine if they had a duty to defend and indemnify Blair in that action.

In September 1987, David Blair's parents Douglas and Doris Blair purchased a homeowner's policy from Farmers Union. This policy was in effect on March 6, 1989, and contained the following provisions:

* * * Definitions * * *

"insured" means you and residents of your household who are . . . your relatives . . .

* * * Exclusions * * *

Personal liability and medical payments to others do not apply to bodily injury . . . arising out of the ownership, maintenance, use, loading or unloading of motor vehicles . . .

In this case Farmers Union contends that Blair's alleged negligence is not covered by the policy because Blair is not a resident of his parents' household. Further they contend that even if Blair is a member of the household, this accident arose out of the use, loading or unloading of a motor vehicle and is excluded from coverage under this policy.

In March 1989, Blair was 19 years of age. Sometime prior to the shooting, he had vacated his apartment and moved back into his parents' Kalispell residence. Three days per week, Blair worked as a chauffeur in Darby, Montana, and stayed at his employer's home. The other four days per week Blair traveled back to Kalispell and stayed at his parents' home where he shared a bedroom

with his younger brother. Blair kept his personal belongings at his parents' residence and used a suitcase to transport his personal effects from Kalispell to Darby.

Blair received all of his mail at his parents' address, and consistently listed his parents' address as his residence. Although Blair did not eat or wash clothes at his parents' house, Blair's truck was registered in his father's name in Flathead County, he banked in Kalispell and occasionally gave his parents money to "help out" with expenses.

I

Was the District Court correct in finding that David Blair was a resident of his parents' household?

Farmers Union contends that the term "resident of the named insured's household" is clear and must be strictly construed according to the terms of the insurance policy. Osburn contends that under these facts the language is ambiguous and should be interpreted in favor of coverage. In this case we do not conclude that the issue of ambiguity is controlling.

In Iowa Nat'l Mutual Ins. Co. v. Boatright, (Colo.App. 1973), 516 P.2d **439,** the insurance carrier sought subrogation from the father of the named insured who negligently caused a fire at his daughter's home. The court examined a number of factors to determine if the insured's father was a "resident of the household" under the homeowner's policy. The court stated:

> In ascertaining the meaning of the term "residents of his household," a number of factors have been designated as being important. Among them are the following:

4

> The subjective or declared <u>intent</u> of the individual,
> Hardware Mutual Casualty Co. v. Home Indemnity Co., 241
> Cal.App.2d 303, 50 Cal.Rptr. 508; the <u>formality or
> informality of the relationship</u> between the individual
> and the members of the household, Pamperin v. Milwaukee
> Mutual Insurance Co., 55 Wis.2d 27, 197 N.W.2d 783; the
> existence of <u>another place of lodging</u> by the alleged
> resident, State Farm Mutual Automobile Insurance Co. v.
> Holloway, 423 F.2d 1281 (10th Cir.); and the relative
> <u>permanence or transient nature</u> of the individual's
> residence in the household, Hardware Mutual Casualty Co.
> v. Home Indemnity Co., supra.
>
> No one factor by itself is determinative of the ultimate
> issue. All must be considered in the light of the basic
> consideration of whether the parties to the insurance
> contract intended that coverage would extend to the
> alleged insured. [Emphasis added.]

Boatright, 516 P.2d at 440.

We adopt the <u>Boatright</u> factors in this case and conclude that Blair was a resident of his parents' household. First, Blair's conduct is consistent with an intent to reside with his parents. He consistently listed his parents' address as his residence. Blair generally stayed at his parents' home four days per week, received his mail at that address, and kept his personal possessions there.

Next Blair had an informal relationship with the members of his parents' household. Although he did not launder his clothes or consistently eat meals with the members of the household, they interacted as a family. Blair "helped out" with household expenses, and his truck was registered in his father's name.

Further, Blair had no other place of lodging. Although, he stayed at his employer's home three days per week, Blair transported his possessions from Kalispell to Darby by suitcase. He conducted his banking in Kalispell, registered his truck in

Kalispell, and resided in Darby only while working.

Finally, Blair permanently resided at his parents' home. A few months prior to the shooting, Blair had vacated his Kalispell apartment and moved in with his parents. At the time of the shooting, he had no immediate plans to move and was in fact still residing with his parents in July 1990.

Given the facts presented above, we conclude that the parties to the insurance contract intended that coverage would extend to Blair, the named insured's son.

Although the lower court found that resident of the household is an ambiguous term, we do not find it necessary or appropriate to analyze the term from that perspective. Under the Boatriuht analysis we hold that the District Court was correct in finding that Blair was a resident of his parents' household.

## II

Was the District Court correct in declaring that the policy's automobile exclusion did not apply to the underlying negligence action?

Farmers Union contends that Osburn's shooting arose out of the use of an automobile and they cite cases which denied homeowner coverage under automobile exclusions. In Wyoming Farm Bureau Ins. Co. v. Mobile Ins. Co. (10th Cir. 1972), 467 F.2d 990, the court denied homeowner coverage when the passenger injured a pedestrian by throwing a bottle from a moving car. The court held that the injury was incident to the use of the vehicle and that the accident was excluded under the homeowner's policy. Wyoming Farm Bureau,

467 F.2d at 995.

In another case, as a passenger outside the vehicle was preparing to load, a rifle inside the vehicle discharged. Colorado Farm Bureau Mut. Ins. Co. v. West American Ins. Co., (Colo.App. 1975), 540 P.2d 1112, 1113. That court denied homeowner coverage for resulting injuries. It held that the accident would not have occurred but for the loading of the motor vehicle and therefore fell within the Bureau automobile exception of the homeowner's policy. Colorado Farm Bureau, 540 P.2d at 1114.

We find these cases dissimilar from the present case. In the present action, the accident occurred inside a house and during a party, after the passenger had left the car. Although Blair had the gun stored in the car prior to the shooting, we find no connection between the use of the car, the removal of the weapon from the car, and the shooting. Therefore, we conclude that the accident is not excluded from coverage under this homeowner's policy's automobile exclusion because it did not arise from the use, loading or unloading of the vehicle.

We hold that the District Court correctly found that the automobile exclusion in Blair's homeowner's policy did not apply to this shooting.

Affirmed.

_____
Justice

We Concur:

_____

7

John Conway Harrison

William E Hunt

R.C. McDonough

Justices

September 24, 1991

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James M. Ramlow
MURRAY & KAUFMAN, P.C.
P.O. **Box** 728
Kalispell, MT 59903

Jeffrey D. Ellingson
ELLINGSON LAW OFFICES
33 Second Street East
Kalispell, MT 59901

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:
Deputy