No. 99-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 380

303 Mont. 519

16 P. 3d 399

SAFECO INSURANCE COMPANY OF AMERICA,

Plaintiff and Respondent,

v.

VICKY LISS and PATRICIA BRUTHERS,

Defendants and Appellants.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison,

The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Michael J. Lilly, Berg, Lilly, Andriolo & Tollefsen, Bozeman, Montana

For Respondent:

John E. Bohyer, Phillips & Boyher, Missoula, Montana

Submitted on Briefs: February 24, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Vicky Liss and Patricia Bruthers (hereinafter Bruthers) appeal from the summary judgment entered in favor of Safeco, as well as the denial of their own motion for summary judgment, by the Fifth Judicial District Court, Madison County. Safeco brought a declaratory judgment action, seeking an order that it had no duty to indemnify or defend Liss, its insured, in a lawsuit brought by Bruthers against Liss for the injuries Bruthers received after Liss shot her with a .22 caliber handgun. The District Court granted Safeco's summary judgment based on policy provisions excluding intentional and illegal acts from personal liability coverage, and the undisputed fact that Liss pled guilty to the charge of aggravated assault.

¶2 We affirm in part, reverse in part, and remand.

¶3 Bruthers raises the following two issues:

1. Did the District Court err in granting Safeco's motion for summary judgment?

2. Did the District Court err in denying Bruthers' motion for summary judgment?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 This action stems from a shooting incident that occurred on July 10, 1997, near Wade Lake in Madison County, Montana. On that day, Liss decided to take lunch out to her husband, Harry, who was grading roads not far from their home. At the time, Liss was allegedly under the influence of numerous prescription medications.

¶5 Upon locating Harry driving his road grader, Liss discovered that Patty Bruthers was also in the cab. The record indicates that at one time the three had been mutual friends, but

that while Liss and her husband were separated for 10 months in 1996, Bruthers and Harry dated or socialized together. Subsequently, after getting back together with Harry, Liss had grown jealous and suspicious of Bruthers.

¶6 Liss stopped her car in front of the grader, got out, and brandished a .22 caliber handgun at Harry and Bruthers, and instructed them in some manner to step down from the grader. Apparently, Liss and her husband stored the pistol in the vehicle's glove box for the purpose of shooting gophers and other vermin. It is alleged that Liss's impulsive response was in part prompted by the fact that Harry did not stop once Liss pulled in front of the grader, and in fact struck the vehicle, which frightened or alarmed her.

¶7 The precise facts of what happened next are somewhat confusing. It is undisputed, however, that once Harry and Bruthers had stepped down from the grader, Liss instructed Bruthers to get away from Harry and then the gun in her hand discharged a single shot, which struck Bruthers in the neck, traveled downward, collapsed a lung, and exited through Bruthers' back. Harry did not see the shot fired. It is unclear whether Liss was pointing the gun at Bruthers when the gun went off, or whether Liss pulled the trigger.

¶8 Liss insisted that the shooting was an accident, that she thought she may have fired a warning shot into the ground, and that due to the influence of several prescription medications, she could not clearly recall the event. The various accounts of the incident indicate that Liss was unaware that Bruthers had in fact been struck after the shot was fired. The record indicates that both Liss and Harry assisted Bruthers after realizing Bruthers had been shot, and drove her to a hospital in Ennis, Montana.

¶9 Liss was subsequently charged with aggravated assault, a felony, and pled guilty on February 17, 1998, pursuant to a plea bargain agreement. Her guilty plea was a *nolo contendere* plea pursuant to § 46-12-212(2), MCA, meaning that while she did not admit her guilt--due to the fact that she could not clearly remember shooting Bruthers and claimed that it was an accident--in view of the state's evidence, she conceded that she would be found guilty should she proceed to trial. The District Court sentenced her to 20 years with all of this time suspended, which was the sentence recommended under the plea bargain agreement.

¶10 Bruthers subsequently filed suit in federal court (Bruthers is a resident of New Jersey), alleging Liss had acted negligently as well as intentionally, under an intentional tort theory of battery. Bruthers claimed she was entitled to compensation for her physical injuries,

which included the bullet wound to her neck and a punctured lung, as well as compensation for emotional distress. She also claimed that she was entitled to punitive damages in the amount of $500,000. Bruthers eventually dropped the intentional tort claim.

¶11 In defense, Liss claimed that she was involuntarily intoxicated at the time, and therefore not responsible for her actions. This action was pending at the time the District Court entered its judgment in this matter, and apparently Liss and Bruthers have subsequently settled the case, with Bruthers taking assignment of Liss's claims for indemnification against Safeco for a judgment of $150,000.

¶12 Liss tendered Bruthers' complaint filed against her to Safeco. As Liss's home owner's insurer, under a policy that included coverage for personal liability, Safeco subsequently provided Liss with a legal defense, with a reservation of rights, until the court in this matter rendered its decision,

¶13 Safeco filed its petition for declaratory judgment on March 1, 1999. Bruthers filed her Answer on May 17, 1999. (Liss has not entered an appearance in this action, and all subsequent references to Bruthers refer to her, individually.) Safeco sought two specific declarations from the District Court: (1) that it had no duty to defend its insured, Liss, in a tort claim brought by Bruthers pending in federal court; and (2) it had no duty to indemnify its insured, Liss, in the same lawsuit.

¶14 Liss's policy with Safeco provided the following coverage:

COVERAGE E -- PERSONAL LIABILITY

If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent . . . .

COVERAGE F -- MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury.

The policy defines "occurrence" as "an accident, including exposure to conditions, which result in: a. bodily injury; or b. property damage." The Safeco policy, however, provided the following exclusions:

1. Coverage E -- Personal Liability and Coverage F -- Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured;

2. Coverage E -- Personal Liability, does not apply to:

a. Liability:

(5) arising out of any illegal act committed by or at the direction of an insured.

¶15 Safeco filed a motion for summary judgment on May 19, 1999. Bruthers filed her cross-motion for summary judgment on July 30, 1999. Safeco took numerous procedural steps to avoid discovery prior to the summary judgment hearing, and took further steps to exclude discovery materials that had been filed in Bruthers' lawsuit against Liss. Safeco maintained that such materials were irrelevant due primarily to the conclusive effect of Liss's guilty plea.

¶16 Safeco grounded its motion for summary judgment on four theories: (1) that Montana public policy and § 28-2-702, MCA, "forbid the contractual indemnification of an individual for illegal or criminal acts;" (2) the shooting did not constitute an "occurrence" as defined in the policy; (3) the intentional act and illegal act exclusions barred coverage; and (4) Liss was collaterally estopped to contest the issue of intent based on her guilty plea.

¶17 A summary judgment hearing took place on August 17, 1999. The court entered its findings, order and memorandum on August 30, 1999, and granted Safeco's motion for summary judgment, and denied Bruthers' motion for summary judgment.

¶18 The court based its judgment on the following material facts: Liss shot Bruthers with her .22 caliber revolver inflicting serious injuries; Liss was charged with aggravated assault; she entered a plea of guilty; the guilty plea was pursuant to Montana's *nolo contendere* statute, § 46-12-212(2), MCA; Liss provided a statement in her guilty plea that "I don't remember shooting Patty Bruthers;" Liss denied to an investigating officer that she was on drugs at the time; and Safeco was defending Liss in the tort action brought by Bruthers with a reservation of rights.

¶19 Based on these undisputed facts, the court first concluded Safeco's "illegal act" exclusion was clear and unambiguous, and comported with § 28-2-702, MCA, which prohibits contracts that "exempt anyone from responsibility for his own fraud, for willful injury to the person or property of another, or for violation of law, whether willful or negligent." The court concluded that Liss's conduct was intentional, as a matter of law, based on her conviction for aggravated assault. The court determined that "Liss's defense of loss of memory and the so-called *Alford* plea is irrelevant." The court determined that the issue of intent could therefore not be re-litigated. The court stated that "authority from the Restatement of Judgments, the case law from all jurisdictions and the text authorities all support Safeco's position." Finally, the court concluded that under the facts and law, Safeco was entitled to summary judgment on its duty to indemnify and defend Liss in the Federal Court action.

¶20 Bruthers appeals the judgment entered in favor of Safeco, and the District Court's denial of her motion for summary judgment.

## STANDARD OF REVIEW

¶21 This Court reviews an order granting summary judgment *de novo*, using the same Rule 56, M.R.Civ.P., criteria applied by the district court. *See Calcaterra v. Montana Resources*, 1998 MT 187, ¶ 9, 289 Mont. 424, ¶ 9, 962 P.2d 590, ¶ 9. This Court looks to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. *See Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17, 988 P.2d 1221, ¶ 17.

¶22 Summary judgment is an extreme remedy which should be granted only when there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ.P., *Calcaterra*, ¶ 9. The party seeking summary judgment, therefore, has the burden of demonstrating a complete absence of any

genuine factual issues. *Calcaterra*, ¶ 9. The party seeking summary judgment also must overcome the burden that all reasonable inferences that might be drawn from the offered evidence will be drawn in favor of the party opposing summary judgment. *Erker*, ¶ 17.

¶23 Where the moving party is able to demonstrate that no genuine issue as to any material fact remains in dispute, however, the burden shifts to the party opposing the motion. *Calcaterra*, ¶ 9. This burden shift requires that the opposing party present material and substantial evidence, rather than merely conclusory or speculative statements, to raise a genuine issue of material fact. *Erker*, ¶ 17.

## DISCUSSION

### *Issue 1.*

*Did the District Court err in granting Safeco's motion for summary judgment?*

¶24 The District Court apparently based its summary judgment in favor of Safeco on the "illegal act" exclusion found in Liss's policy with Safeco coupled with Liss's aggravated assault conviction, although other grounds were discussed in its order and memorandum. For example, the District Court did not expressly rule whether the shooting incident constituted an "occurrence" as defined under Liss's policy with Safeco, which was presented to the court by Safeco as one theory upon which summary judgment could be granted. Safeco, in fact, presented the following four theories as distinct grounds for summary judgment in its favor: indemnification of Liss's act would violate public policy; the shooting incident was not an "occurrence"; the policy excludes coverage for intentional and illegal acts; and Liss is collaterally estopped to contest the issue of intent because she pled guilty to aggravated assault.

¶25 Pursuant to our *de novo* standard of review, if we reach the same conclusion as the District Court, but on different grounds, we may nevertheless affirm the lower court's judgment. *See Erker v. Kester*, 1999 MT 231, ¶ 21, 296 Mont. 123, ¶ 21, 988 P.2d 1221, ¶ 21 (citing *Geiger v. Department of Revenue* (1993), 260 Mont. 294, 298, 858 P.2d 1250, 1252, where Court affirmed district court's constructive discharge judgment under alternative negligence theory). We therefore acknowledge Safeco's contention here on appeal that its motion for summary judgment may be properly granted on one of four theories, and will address each one in kind.

## *1. Indemnification would violate public policy.*

¶26 The "public policy" statute addressed by Safeco, § 28-2-702, MCA, which it claims forbids the contractual indemnification of an individual for illegal or criminal acts, has no application whatsoever to the case at bar.

¶27 The statute provides: "All contracts which have for their object, directly or indirectly, to *exempt anyone from responsibility* for his own fraud, for willful injury to the person or property of another, or for violation of law, whether willful or negligent, are against the policy of the law." (Emphasis added). The District Court concluded that Liss's conduct "in intentionally committing and being convicted of the Aggravated Assault violated the public policy concept of this statute." The lower court further declared that this Court has "repeatedly invoked this statute on public policy grounds" and cited to our decisions, *Smith v. State Farm Ins. Co.* (1994), 264 Mont. 129, 870 P.2d 74, and *Mutual Serv. Cas. Ins. Co. v. McGehee* (1985), 219 Mont. 304, 711 P.2d 826.

¶28 The statute, § 28-2-702, MCA, does not appear once in either case cited by the District Court--and for a very simple, sound reason. A contract whose object is to "exempt" a person from future potential liability--i.e., a waiver or release--is clearly distinguishable from an insurance contract that indemnifies a person for another party's damages once liability is imposed. This statute was adopted verbatim from California law. *See* Cal.Civ.Code § 1668; *Miller v. Fallon County* (1986), 222 Mont. 214, 220, 721 P.2d 342, 346. A cursory review of related case law reveals, in fact, that the California courts have held that § 1668 is not applicable to indemnity agreements. *See State Farm Fire & Cas. Co. v. Eddy* (Cal.Ct.App. 1990), 267 Cal.Rptr. 379, 383.

¶29 In light of the foregoing, why Safeco chose to rely on this statute in arguing that as a matter of public policy it has no duty to defend or indemnify its insured remains unclear, and is disregarded.

¶30 Safeco is correct, however, that our well-established public policy "forbids indemnifying willful wrongdoing." *See*, *e.g.*, *Mutual Serv. Cas. Ins. Co.,* 219 Mont. at 308, 711 P.2d at 828 (identifying public policy that "forbids contracts indemnifying a person against loss resulting from his own willful wrongdoing," and quoting authority from Arizona and Florida). Bruthers, however, is not claiming that the policy *should* cover an intentional act--which would be patently absurd given the fact that the policy expressly excludes liability coverage for intentional acts of an insured. Rather, Bruthers maintains

that the shooting was an accident and that Liss may have acted involuntarily due to a combination of prescription medications, and therefore could not have acted intentionally.

¶31 Safeco further contends that in addition to intentional acts, it is against public policy for an insurance contract to indemnify any "illegal" act committed by an insured, and cites to a recent federal decision arising in Montana for that proposition. *See Safeco Ins. Co. of America v. Tunkle* (D.Mont. 1998), 997 F.Supp. 1356, 1360 (stating that "[i]llegal or criminal acts cannot be insured").

¶32 This broad conclusion of the federal court, with all due respect, is only partially correct. We agree that in Montana there is an unmistakable public policy against insurance policies that provide an insured indemnification for not only his intentional acts, but his *criminal* acts as well. *See*, *e.g.*, *First Bank (N.A.)-Billings v. Transamerica Ins. Co.* (1984), 209 Mont. 93, 99, 679 P.2d 1217, 1220 (quoting *Northwestern Nat'l Cas. Co. v. McNulty* (5th Cir. 1962), 307 F.2d 432, that "[w]here a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct" and "[i]t is not disputed that insurance against criminal fines or penalties would be void as violative of public policy").

¶33 Clearly, however, not all "illegal" acts are intentional or criminal. If the public policy of this State mandated that a person could not insure any or all of his or her "illegal acts," regardless of *mens rea*, it would be virtually impossible to obtain coverage for most vehicle accidents. *See*, *e.g.*, §§ 61-8-104 and 61-8-302, MCA (requiring all drivers to operate vehicle in a "careful and prudent manner," and providing that failure to do so is "unlawful"). The same holds true for most accidental loss due to fire. *See* § 50-63-102, MCA (providing penalty for setting or leaving any fire that damages or destroys property with no requisite *mens rea*). Further, the public policy expressed in *First Bank* against insuring criminal "fines or penalties" does not necessarily preclude, as a matter of public policy, insurance coverage in a civil claim for a victim's damages that result from an insured's negligent criminal conduct. *See*, *e.g.*, § 45-5-201 (defining assault as negligently causing bodily injury to another with a weapon); § 45-5-208, MCA (defining negligent endangerment as conduct that creates a substantial risk of death or serious bodily injury).

¶34 We therefore hold that Safeco's duty to defend and indemnify Liss cannot be excused by a declaratory judgment in this instance based on the public policy and statutory grounds set forth in Safeco's argument and identified by the District Court in its order and memorandum.

## 2. The shooting was not an "*occurrence*."

¶35 The District Court did not squarely address the issue of whether the shooting incident at issue was not an "occurrence," and therefore not subject to personal liability coverage under Liss's policy with Safeco. The court did, however, re-state Safeco's assertion that "[c]ommon sense would dictate that shooting another other than in self-defense is not insurable." We conclude that whether the shooting incident satisfies Liss's policy definition of an "occurrence" remains shrouded in disputed material facts, and is therefore inappropriate grounds for summary judgment.

¶36 Under the policy definitions, an "occurrence" means an "accident." Generally, the term "accident" from the standpoint of the insured reasonably refers to any unexpected happening that occurs without intention or design on the part of the insured. *See* Black's Law Dictionary at 15 (6th ed. 1990); *Farmers Union Mut. Ins. v. Kienenberger* (1993), 257 Mont. 107, 109, 847 P.2d 1360, 1361. In turn, "accidents" that result from the unsafe use or mishandling of firearms are an all too frequent "occurrence" in this State--and, more importantly, are an insurable event unless otherwise expressly excluded under an insured's personal liability policy. *See*, *e.g.*, *Farmers Union Mut. Ins. Co. v. Blair* (1991), 250 Mont. 52, 53, 817 P.2d 1156, 1157 (third-party accidentally shot with insured's gun at party); *Kohne v. Yost* (1991), 250 Mont. 109, 111, 818 P.2d 360, 361 (describing negligence claim involving a shooting incident with B.B. gun resulting in permanent eye damage to victim); *Estate of Strever v. Cline* (1996), 278 Mont. 165, 173, 924 P.2d 666, 670 (stating that "various types of liability insurance policies are readily available at a reasonable cost and cover the risks inherent in the negligent use and storage of firearms"); *Gentry v. Douglas Hereford Ranch, Inc.*, 1998 MT 182, ¶ 9, 290 Mont. 126, ¶ 9, 962 P.2d 1205, ¶ 9 (victim accidentally shot by hunting rifle after rifle owner stumbled and fell). Accordingly, Safeco's contention that "common sense" dictates that such incidents involving firearms are not occurrences or accidents and are therefore not insurable is entirely without merit.

¶37 Similarly, we disagree with Safeco that a shooting incident, such as the one at bar, falls within the nexus of our "per se" intentional act case law. This Court has identified certain acts, such as hitting another person in the face with your fist, that if admitted or proven, are "per se" intentional acts regardless of whether the actual injury inflicted was intended. *See*, *e.g.*, *Mutual Serv. Cas. Ins. Co. v. McGehee* (1985), 219 Mont. 304, 307, 711 P.2d 826, 827 (insured admitted to intentionally striking appellant in the face); *New Hampshire Ins. Group v. Strecker* (1990), 244 Mont. 478, 480, 798 P.2d 130, 131 (insured admitted to sexually molesting his daughter); *American States Ins. Co. v. Willoughby*

(1992), 254 Mont. 218, 222, 836 P.2d 37, 40 (hitting, biting and kicking stock car race security guards deemed per se intentional act); *Smith v. State Farm Ins. Co.* (1994), 264 Mont. 129, 132, 870 P.2d 74, 75 (stating that "striking another person in the face is an intentional act because of the certainty of causing harm, and any argument stating the opposite does not change this rule").

¶38 We conclude that the mere fact that a person is injured as a result of another person's handling of a loaded weapon is distinguishable from the foregoing acts, and, absent an admission or substantial evidence that establishes the intent of an insured, cannot be characterized as a "per se" intentional act.

¶39 Here, in light of the reasonable inferences that might be drawn from the offered evidence in favor of Bruthers, her injuries may very well have resulted from an event void of intent or design. Liss consistently maintained that she thought she fired a warning shot, and that she did not know what happened when the gun went off, or that Bruthers had actually been shot. She apparently exclaimed it was an accident shortly after the gun went off. She has produced expert opinions indicating she may have been incapable of forming the necessary intent to assault Bruthers due to a combination of prescription medications. This Court has, in fact, indicated that evidence of diminished mental capacity might preclude an insured from forming the requisite intent to harm. *See*, *e.g.*, *New Hampshire Ins. Group*, 244 Mont. at 481, 798 P.2d at 131. Further, we have no conclusive evidence of how Liss was handling the weapon at the time, or even whether she was in fact aiming directly at Bruthers when the gun went off. The District Court's factual account provides no further insight other than the fact that "Liss shot Bruthers with her .22 caliber revolver inflicting serious injuries."

¶40 In light of the foregoing, we conclude that summary judgment based on the legal conclusion that the shooting incident was not an "occurrence," as defined under Liss's policy with Safeco, cannot be sustained due to the material facts that remain in dispute.

### 3. Policy exclusions bar indemnification; and 4. Liss is collaterally estopped to contest the issue of intent.

¶41 Safeco's argument that the exclusions under Liss's policy bar Bruthers' claim, as well as absolve it of its duty to defend, rests solely on the conclusive evidentiary effect of Liss's guilty plea to the charge of aggravated assault. Meaning, Safeco has essentially presented no evidence other than Liss's guilty plea to satisfy its burden of proof that Liss either

intentionally shot Bruthers, or that the shooting incident was an illegal act.

¶42 Thus, we narrow our review to the issue of collateral estoppel; specifically, we address whether a person's *nolo contendere* guilty plea in a criminal matter is conclusive proof of intent or illegality and therefore precludes re-litigation of these issues in a subsequent civil proceeding.

¶43 Safeco contends that Liss's guilty plea, standing alone, is sufficient to legally establish that Liss, in fact, committed the illegal act of aggravated assault, a crime that requires intent. *See* § 45-5-202(1), MCA (a person commits the offense of aggravated assault if the person purposely or knowingly causes serious bodily injury to another). Safeco contends, therefore, that a court need not review affidavits or depositions or any other evidence in granting a summary judgment, and in this instance the ends of judicial economy are served. *See Aetna Life & Cas. Ins. Co. v. Johnson* (1984), 207 Mont. 409, 414, 673 P.2d 1277, 1280 (stating that application of collateral estoppel promotes expeditious trials and stability of judgments).

¶44 Bruthers, of course, contends that a guilty plea in a criminal matter, as a matter of law, carries no estoppel effect in a related civil proceeding. Instead, Bruthers contends that, although admissible, Liss's guilty plea is not conclusive that Liss committed an intentional illegal act. This is particularly true, Bruthers argues, when the plea is an "Alford plea," or a plea of *nolo contendere* pursuant to § 46-12-212(2), MCA, which means that Liss did not admit her guilt at all, but rather conceded that the State could prove her guilt based on its evidence against her. Bruthers emphasizes that from the moment she was injured to date, Liss has adamantly maintained that the shooting was accidental.

¶45 Although not expressly addressing the issue of collateral estoppel, the District Court determined that the shooting incident was "intentional as a matter of law" and that Liss's involuntary intoxication defense and "so-called *Alford* plea" were irrelevant. The court determined, therefore, that the issue of intent "can not be re-litigated," and cited to this Court's decision, *Farmers Plant Aid, Inc. v. Huggans* (1994), 266 Mont. 249, 879 P.2d 1173, as authority for its conclusion.

¶46 The law in Montana on this issue could not be more clear. This Court follows the three-part collateral estoppel rule established in *Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (Cal. 1962), 375 P.2d 439, *cert. denied* 372 U.S. 966, 83 S.Ct. 1091, 10 L.Ed.2d 130, to determine whether a criminal conviction may be used to conclusively establish a factual

matter in a subsequent civil trial. We recognize the applicability of collateral estoppel where: (1) the issue decided in the prior adjudication is identical with the one presented in the action in question; (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. *Johnson*, 207 Mont. at 413, 673 P.2d at 1279.

¶47 In *Johnson*, the insured was convicted of criminal mischief and arson following a criminal jury trial. We concluded that the doctrine of collateral estoppel barred re-litigation of the issue of whether the insured intentionally or negligently set the fire in question in a subsequent civil proceeding. *See Johnson*, 207 Mont. at 415, 673 P.2d at 1280.

¶48 Contrary to Safeco's argument, a guilty plea as a matter of law fails the second prong of the three-part test, because a guilty plea does not constitute a judgment on the merits. *See Northwestern Nat. Cas. Co. v. Phalen* (1979), 182 Mont. 448, 461, 597 P.2d 720, 727 (concluding that insured's plea of guilty to felony assault was not conclusive either as to his policy coverage or the duty of Northwestern to defend him in a tort action, and citing *Teitelbaum Furs*). A decision from Washington state, which also involved a shooting incident, relied on our decision in *Phalen* as well as similar decisions from other jurisdictions, and specifically held that an Alford plea has no collateral estoppel effect. *See Safeco Ins. Co. of America v. McGrath* (Wash.Ct.App. 1985), 708 P.2d 657, 660-61 (stating that its decision accords with a majority of jurisdictions which recognize a distinction between guilty pleas and convictions which were obtained following a trial and have refused to apply the doctrine of collateral estoppel where the defendant has pled guilty).

¶49 The underlying reasoning for this rule was thoroughly addressed by Judge Traynor in *Teitelbaum*:

> A plea of guilty is admissible in a subsequent civil action on the independent ground that it is an admission. It would not serve the policy underlying collateral estoppel, however, to make such a plea conclusive. The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy. This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case. When a plea of guilty has been entered in the prior action, no issues have been drawn into controversy by a full

presentation of the case. *It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation.* Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action.

*Teitelbaum Furs, 375 P.2d at 441 (emphasis added) (citations and internal quotations omitted). The foregoing applies to the factual circumstances described here. Obviously, it was to Liss's advantage to plead guilty to the charge of aggravated assault rather than risk the uncertainty of a jury trial, and a potential prison term.*

¶50 Safeco suggests, however, that the collateral estoppel rule as applied to guilty pleas found in *Phalen* and *Johnson* was altered or overturned by this Court's decision in *Farmers Plant Aid v. Huggans*. Although counsel for Safeco professes a perspicacious understanding of the *Farmers Plant Aid* decision--having served as counsel in that matter--its interpretation of this Court's decision is misleading. The second prong of the three-prong test--adjudication on the merits--was never an issue in that case, nor did this Court address the estoppel effect of a guilty plea. *See Farmers Plant Aid*, 266 Mont. at 256, 879 P.2d at 1178 (addressing whether the "identical issue" element of collateral estoppel was met). Contrary to Safeco's argument, this Court did not revise or overturn or otherwise alter the law governing collateral estoppel in our decision in *Farmers Plant Aid*. The application of that case to the matter at bar, in fact, is entirely misplaced and irrelevant.

¶51 Accordingly, Liss's *nolo contendere* guilty plea to aggravated assault carries no collateral estoppel effect in the civil proceedings between her and Bruthers. Whether Liss acted intentionally or committed an illegal act has therefore not been determined as a matter of law. Consequently, the judgment of the District Court granting summary judgment in favor of Safeco is reversed.

## Issue 2.

*Did the District Court err in denying Bruthers' motion for summary judgment?*

¶52 Bruthers claims that based on the evidence of Liss's involuntary intoxication, summary judgment in her favor should be granted. We disagree.

¶53 Pursuant to our analysis under Issue 1., the factual basis of whether the incident in question was an "occurrence" under the policy--i.e., an "accident"--remains in dispute. Further, because the District Court apparently entered its judgment based on the estoppel effect of Liss's guilty plea as conclusive proof that Liss had committed an illegal act, it chose to not consider other evidence. The court, for example, made no factual determination concerning involuntary intoxication. The court will now have that opportunity.

¶54 Accordingly, we affirm the District Court's denial of Bruthers' summary judgment, and remand for a determination on the merits.

¶55 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

Justice Terry N. Trieweiler specially concurs.

¶56 I concur with the result based on the unique facts in this case. Specifically, I would make a distinction between a plea of "*nolo contendere*" and "guilty" for purpose of issue preclusion in subsequent civil litigation. Therefore, I do not agree with all that is said in the majority opinion.

/S/ TERRY N. TRIEWEILER

Chief Justice J. A. Turnage dissenting.

¶57 I respectfully dissent. I would affirm the District Court's granting of summary judgment to Safeco. I concur with the majority opinion's affirming the denial of the summary judgment motion of Patricia Bruthers.

¶58 Vicky Liss, on July 10, 1997, went gunning for Patricia Bruthers. She found Patricia Bruthers in the company of Harry Liss, Vicky's husband. Vicky had in her possession a loaded .22 caliber handgun and succeeded in shooting Patricia Bruthers, severely injuring her.

¶59 In my opinion, this is a clear case. The injuries to Patricia Bruthers arose out of an illegal act committed by Vicky Liss and not covered under the Safeco policy. Liss was charged with aggravated assault, a felony, and pled guilty pursuant to a plea bargain agreement. Even though her guilty plea was a *nolo contendere,* she conceded that she would be found guilty if she proceeded to trial.

¶60 The Safeco policy clearly excluded coverage under "E" and provided that:

> 2. Coverage E - Personal Liability, does not apply to:
>
> a. Liability: . . .
>
> (5) arising out of any illegal act committed by or at the direction of an insured.

¶61 In my opinion, the exclusion is clear and applies in this case. Summary judgment was properly granted to Safeco, and the District Court should be affirmed.

/S/ J. A. TURNAGE