No. 04-409

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 32

_____

STATE OF MONTANA,

      Plaintiff and Respondent,

   v.

PAMELA VERNES,

      Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 02-523
The Honorable Gregory R. Todd, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Chief Appellate Defender, Helena, Montana

      For Respondent:

          Hon. Mike McGrath, Attorney General; Mark W. Mattioli, Assistant
Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney; Rodney E. Souza and
Scott D. Twito, Deputy County Attorneys, Billings, Montana

_____

Submitted on Briefs:  December 21, 2005

Decided:  February 16, 2006

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Appellant Pamela Vernes (Vernes) appeals from her convictions for attempted deliberate homicide and attempted deliberate homicide by accountability in the Thirteenth Judicial District, Yellowstone County.  We affirm.

¶2      We review the following issues on appeal:

¶3      Whether the District Court violated Vernes's due process rights by excluding portions of her expert witness's testimony related to the defense of involuntary intoxication that failed to satisfy the "more probable than not" standard for admissibility.

¶4      Whether the District Court should have instructed the jury to agree unanimously on the specific facts that constituted the elements of attempted deliberate homicide and attempted deliberate homicide by accountability.

¶5      Whether the District Court properly imposed restitution costs without suspending or deferring any portion of Vernes's sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6      Vernes and her husband Richard went on the warpath in the early morning hours of July 5, 2002.  They ingested a concoction of alcohol and prescription pills, including Xanax, then dressed half naked and painted their faces and bodies in an ill-fated attempt to resemble Native Americans.  Vernes and Richard also built a makeshift teepee out of firewood in their driveway.  A neighbor correctly determined the time had come to call the police when Vernes and Richard doused the teepee in gasoline.

¶7      Vernes's and Richard's bizarre conduct may have been viewed as humorous, but for their nefarious intentions.  They proceeded to storm the apartment of their landlord, Luella Loga (Luella), armed with large knives and a walking stick.  Vernes attacked

2

Luella's 82-year-old mother, Ella Loga (Ella), with a knife and walking stick, while Richard tried to scalp Luella. Fortunately, the police arrived in the midst of the melee and apprehended Vernes and Richard.

¶8 The State charged Vernes with attempted deliberate homicide for her attack on Ella and attempted deliberate homicide by accountability for her supporting role in Richard's attack on Luella. A nurse practitioner had prescribed a low dosage of the prescription drug Xanax to Vernes in an effort to reduce her anxiety on June 3, 2002. Vernes's prescription required refills at two week intervals. The combination of the low dosage and frequent refill requirement meant that even if Vernes had ingested the whole bottle of Xanax, she would not have exceeded the maximum daily dosage. Vernes sought to present an involuntary intoxication defense based upon an alleged paradoxical reaction to Xanax. A paradoxical reaction occurs when a person taking Xanax to reduce anxiety actually experiences the opposite effect. Such an unexpected reaction may cause a person to become aggressive or violent.

¶9 The District Court held an evidentiary hearing on the matter. The State filed a motion in limine following the evidentiary hearing to prohibit Vernes from introducing evidence of involuntary intoxication based upon the fact that Vernes voluntarily had ingested both Xanax and alcohol. The District Court determined that Vernes could present a defense of involuntary intoxication based upon an unexpected pharmacological reaction to Xanax alone. The court further determined, however, that Vernes could not present such a defense based upon an unexpected reaction from mixing Xanax and alcohol as she voluntarily ingested both.

¶10 The District Court also restricted the testimony of Vernes's expert witness, Dr.

3

Rich. The District Court permitted Dr. Rich to testify that a paradoxical reaction constitutes a known side effect of Xanax, but prevented him from testifying that he believed a "definite possibility" existed that Vernes suffered from such a paradoxical reaction. The court reasoned that portion of Dr. Rich's testimony fell short of the standard for admissibility of expert testimony in that he could not testify within a "reasonable degree of medical certainty," or even that it was "more probable than not," that Vernes suffered a paradoxical reaction from the Xanax. In fact, Dr. Rich testified in the evidentiary hearing that only a "possibility" existed that Vernes's ingestion of Xanax produced a paradoxical reaction.

¶11 Near the conclusion of trial the District Court considered jury instructions. Vernes contended that the court must give a specific unanimity instruction to require the jury to agree unanimously on the specific facts that constituted the elements of attempted deliberate homicide and attempted deliberate homicide by accountability. Specifically, Vernes contended that the jury must agree unanimously on the specific facts that constituted a "material step" towards the commission of deliberate homicide, an element of attempt. The District Court rejected Vernes's argument and provided the standard jury instructions without a specific unanimity instruction.

¶12 The jury convicted Vernes of attempted deliberate homicide and attempted deliberate homicide by accountability. The District Court sentenced Vernes to 80 years on the count of attempted deliberate homicide and 70 years for attempted deliberate homicide by accountability with the sentences to run concurrently. The District Court did not suspend any of the prison time. The court also imposed restitution costs of $23,525.70 for the victim's medical expenses. This appeal followed.

4

**DISCUSSION**

¶13 Vernes contends on appeal that the District Court violated her due process rights when it fatally impaired her involuntary intoxication defense by excluding a portion of Dr. Rich's testimony. She also argues that the jury should have been instructed to agree unanimously on the specific facts that constituted a material step, an element of attempted deliberate homicide and attempted deliberate homicide by accountability. Finally, Vernes maintains that the District Court improperly awarded restitution costs without having suspended or deferred any portion of her sentence.

Involuntary Intoxication Defense

¶14 This Court often has observed that a district court possesses broad discretion in ruling on the admissibility of expert testimony, and without a showing of abuse of discretion, the district court's ruling will not be disturbed on appeal. *State v. Riggs*, 2005 MT 124, ¶ 18, 327 Mont. 196, ¶ 18, 113 P.3d 281, ¶ 18.

¶15 Expert testimony may be admitted to assist the trier of fact to understand the evidence or to determine a fact in issue. *State v. Damon*, 2005 MT 218, ¶ 16, 328 Mont. 276, ¶ 16, 119 P.3d 1194, ¶ 16; Rule 702, M.R.Evid. Expert testimony of the type proposed here may not be admitted, however, unless it satisfies the "reasonable medical certainty" test. *See Dallas v. Burlington Northern, Inc.* (1984), 212 Mont. 514, 522, 689 P.2d 273, 277. This Court has defined the reasonable medical certainty test in terms of probabilities as "more likely than not." *Dallas*, 212 Mont. at 523, 689 P.2d at 277.

¶16 The District Court prohibited Dr. Rich from testifying that a "definite possibility" existed that Vernes suffered from a paradoxical reaction during the attack on Ella and Luella. Dr. Rich testified at the evidentiary hearing that "I can't go beyond a possibility.

I couldn't even go to the more-probable-than-not-basis" regarding the probability that Vernes suffered from a paradoxical reaction. The District Court prohibited Dr. Rich from testifying that Vernes may have suffered from an alleged paradoxical reaction to Xanax for failing to meet the standard for admissibility. *See Dallas*, 212 Mont. at 523, 689 P.2d at 277.

¶17 Vernes contends that the "more likely than not" standard for expert testimony arising from Rule 702, M.R.Evid., should not apply to criminal cases where a defendant must be convicted "beyond a reasonable doubt." Vernes argues that due process affords a criminal defendant greater protections than litigants in civil proceedings. She cites *Safeco Ins. Co. of America v. Liss*, 2000 MT 380, 303 Mont. 519, 16 P.3d 399, for support. In *Liss,* this Court overturned a summary judgment order to allow the trier of fact to consider the merits of the involuntary intoxication defense concerning the intentionality of a tort. *Liss*, ¶ 53. Thus, according to Vernes, she should be allowed to present potentially less reliable evidence regarding involuntary intoxication to the jury than would be permitted in a civil case pursuant to the Montana Rules of Evidence. We disagree in this case.

¶18 The State possesses a legitimate interest in regulating the use of proposed expert testimony. The "more likely than not" standard assures that the expert testimony presented to the jury does not represent mere conjecture, but rather is sufficiently probative to be reliable. *Dallas*, 212 Mont. at 523, 689 P.2d at 277. The facts and circumstances presented here do not lead us to believe that the District Court abused its discretion in excluding Dr. Rich's testimony.

¶19 Dr. Rich testified that a paradoxical reaction would be more likely when a person

first started taking Xanax. Vernes was taking a very low dosage of Xanax and had taken it for over a month by the time of her attack on Ella and Luella. Dr. Rich conceded that he could do no more than testify that a mere "possibility" existed that Vernes had a paradoxical reaction. The Montana Rules of Evidence provide the District Court with the discretion to exclude such conjecture. As the final arbiter of questions regarding the ultimate admissibility of evidence, we find no abuse of discretion here. *Damon*, ¶ 21. Thus, the State did not deny Vernes a fair opportunity to defend herself by prohibiting her from introducing her expert's proposed testimony regarding a "possibility" of an alleged paradoxical reaction that did not satisfy the evidentiary rules for admissibility. Due process does not necessarily entitle a defendant to preferential treatment under the rules of evidence.

<u>Unanimous Verdict</u>

¶20 Vernes contends that the requirement for unanimity over the principal factual elements of an offense required the jury to agree unanimously on specific facts that constituted the elements of attempted deliberate homicide and attempted deliberate homicide by accountability. This Court reviews jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Crawford*, 2002 MT 117, ¶ 15, 310 Mont. 18, ¶ 15, 48 P.3d 706, ¶ 15.

¶21 The right to a unanimous jury verdict represents a fundamental right protected by Article II, Section 26 of the Montana Constitution. *State v. Weaver*, 1998 MT 167, ¶ 26, 290 Mont. 58, ¶ 26, 964 P.2d 713, ¶ 26. Unanimity means more than an agreement that the defendant has violated the statute in question; it requires substantial agreement as to

7

the principal factual elements underlying a specific offense. *Weaver*, ¶ 33.

¶22 Vernes contends that the District Court should have provided a specific unanimity instruction to prevent jurors from concluding that different facts constituted a material step towards deliberate homicide. Vernes's claim that juror confusion could have arisen from the fact that the State presented evidence of multiple actions taken by her to satisfy the material step element of attempted deliberate homicide. Those actions included smashing a hole in Luella's front door with a large rock, crawling through the hole into Luella's apartment armed with a knife, pouncing on Ella, and stabbing her with the knife.

¶23 We have determined that a district court must provide a specific unanimity instruction in order to avoid jury confusion. For instance, in *Weaver* the jury convicted the defendant of two counts of sexual assault. *Weaver*, ¶ 1. Each count of assault, however, alleged a series of unlawful acts over spans of six months and five years, respectively. *Weaver*, ¶ 17. We reversed on the grounds that the district court should have provided a specific unanimity instruction to make it clear to the jury that they must render a unanimous verdict with respect to at least one specific alleged unlawful act supporting each count. *Weaver*, ¶ 38. In this way, the specific unanimity instruction prevents a conviction occurring as the result of different jurors concluding that the defendant committed different unlawful acts when a single count alleges more than one unlawful act. *See Weaver*, ¶ 34 (*citing United States v. Echeverry* (9th Cir. 1983), 719 F.2d 974, 975).

¶24 In comparison, the jury convicted Vernes based on a single incident: the attack on Ella and Luella in the early morning hours of July 5, 2002. Vernes generally did not dispute that she and Richard committed the attacks on Ella and Luella exactly as the State

alleged. Her defense consisted largely of the testimony of medical and police personnel regarding her state of mind on the night in question. No risk existed that some jurors would convict her for the attack on July 5, 2002, while others would convict her based solely upon some separate incident. *See United States v. Holley* (5th Cir. 1991), 942 F.2d 916, 926.

¶25 As a general rule, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Schad v. Arizona* (1991), 501 U.S. 624, 631-632, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555. The State did not charge Vernes in the alternative. *Compare State v. Hardaway*, 2001 MT 252, 307 Mont. 139, 36 P.3d 900. The State charged Vernes with attempted deliberate homicide and attempted deliberate homicide by accountability stemming from her single attack on Ella and Luella in the early morning hours of July 5, 2002. The jurors were free to determine that different pieces of evidence supported proof of a material step taken by Vernes and Richard to carry out the attacks so long as they unanimously agreed on the same set of facts: that Vernes attacked Ella and Luella with the intent to commit deliberate homicide on July 5, 2002.

### Restitution Award

¶26 Vernes also appeals from the portion of her sentence imposing restitution costs. Vernes failed to raise an objection at the time of sentencing, but this Court will consider an appeal from an alleged illegal sentence in a criminal case, even when the defendant did not raise a timely objection in the district court. *See State v. Lenihan* (1979), 184 Mont. 338, 602 P.2d 997.

¶27 This Court reviews criminal sentences for legality only to determine whether the

sentence falls within the parameters set by statute. *See State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15. A district court's authority to impose a sentence is defined and constrained by statute, and the court has no power to impose a sentence in the absence of specific statutory authority. *State v. Nelson*, 1998 MT 227, ¶ 24, 291 Mont. 15, ¶ 24, 966 P.2d 133, ¶ 24. We use the criminal statutes in effect at the time the crime was committed to evaluate the sentence. *Dexter v. Shields*, 2004 MT 159, ¶ 13, 322 Mont. 6, ¶ 13, 92 P.3d 1208, ¶ 13. The 2001 statutes apply to the crimes that Vernes committed in 2002.

¶28 Vernes contends on appeal that the District Court did not possess the statutory authority to impose restitution costs without suspending or deferring a portion of her sentence. Vernes's argument focuses on this Court's decision in *State v. Honey*, 2005 MT 107, ¶ 45, 327 Mont. 49, ¶ 45, 112 P.3d 983, ¶ 45, where we held that a district court could not impose restitution costs under § 46-18-201, MCA (2001), unless it suspended or deferred a portion of the sentence.

¶29 An alternative source of statutory authority exists from § 46-18-201, MCA (2001), for the imposition of restitution costs, however, that this Court did not fully address in *Honey*. *See Honey*, ¶ 36. Section 46-18-202(1)(f), MCA (2001), states that the sentencing judge may impose any limitation "reasonably related to the objectives of rehabilitation and the protection of the victim and society." The statute permits a district court to impose a restriction or condition on a defendant's sentence as long as it has some connection to the underlying offense for which the defendant is being sentenced. *State v. McIntire*, 2004 Mont. 238, ¶ 18, 322 Mont. 496, ¶ 18, 97 P.3d 576, ¶ 18.

¶30 This Court has held that § 46-18-202(1)(f), MCA (2001), authorizes restitution in

cases where there is a connection between the crime and the pecuniary loss of the victim. *See McIntire*, ¶ 18. Ella's and Luella's medical expenses directly resulted from Vernes's attack. Section 46-18-202(1)(f), MCA (2001), contains no requirement that a portion of a defendant's sentence be suspended or deferred. Hence, the District Court possessed statutory authority to impose restitution costs according to § 46-18-202(1)(f), MCA (2001).

¶31     Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE