No. 05-176

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 336

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

JEFFREY REUBEN HAUSAUER,

    Defendant and Appellant.


APPEAL FROM:    The District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DC 2003-464,
                Honorable John W. Larson, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        Patricia Bik, Attorney at Law, Helena, Montana

        For Respondent:

        Hon. Mike McGrath, Montana Attorney General, Joslyn M. Hunt ,
        Assistant Attorney General, Helena, Montana

        Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana


                                Submitted on Briefs:  March 29, 2006

                                    Decided:  December 19, 2006

Filed:

    _____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 A jury convicted Jeffrey Hausauer (Hausauer) of operating a methamphetamine laboratory in the Fourth Judicial District, Missoula County. The District Court designated Hausauer as a persistent felony offender and sentenced him accordingly. On appeal, Hausauer contends the District Court should have granted his motion for a directed verdict of acquittal because the State failed to prove the elements of the charged offense. In the alternative, should we decline to reverse on this basis, Hausauer contends the District Court erred when it failed to dismiss for cause two jurors who during *voir dire* revealed biases which made them unable to impartially evaluate Hausauer's case, and improperly instructed the jury on unanimity. Hausauer seeks reversal and an order for a directed verdict of acquittal, or alternatively reversal for a new trial. We affirm in part, reverse in part, and remand for a new trial.

## ISSUES

¶2 The issues on appeal are:

¶3 1. Did the District Court abuse its discretion by denying Hausauer's motion for a directed verdict of acquittal?

2. Did the District Court abuse its discretion by denying Hausauer's motions to excuse two jurors for cause?

3. Did the District Court err by failing to properly instruct the jury on unanimity?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Early on the morning of August 23, 2002, flames engulfed a camping trailer occupied by Hausauer in a residential neighborhood in Missoula, Montana. Although the

source of the fire was never determined, evidence gathered at the scene led law enforcement officers to suspect the fire was caused by an accidental explosion resulting from methamphetamine production. On November 19, 2003, the State charged Hausauer by information with purposely or knowingly engaging in the procurement, possession, or use of chemicals, precursors to dangerous drugs, supplies, equipment, or a laboratory for criminal production or manufacture of dangerous drugs in violation of § 45-9-110, MCA. Hausauer pled not guilty on December 31, 2003.

¶5　A two day jury trial commenced on June 25, 2004. In response to *voir dire* questions, two prospective jurors, L.H. and B.M., voluntarily admitted they had doubts about their abilities to be objective about Hausauer's case. Hausauer moved to dismiss L.H. and B.M. for cause. The District Court denied Hausauer's motions. Hausauer then used peremptory challenges to dismiss the two jurors. Hausauer used all six of the peremptory challenges available to him by the time jury selection concluded. The District Court excused for cause eight other prospective jurors not at issue here.

¶6　The State presented circumstantial evidence to support its charge against Hausauer because no direct evidence showed he operated a methamphetamine lab in the camper that burned. It was undisputed, however, that Hausauer inhabited the camper, occupied the camper when it caught fire, and sustained severe burns to his hands, arms, legs and torso before he exited the burning camper. Further, the camper's charred remains contained many items which are commonly used to produce methamphetamine. Police found in the camper a cooler containing dry ice and a bottle with traces of methamphetamine in it. Police also found two square metal cans of the same type as

3

those which typically hold Coleman fuel or paint thinner, lye, a packaging label for hydrochloric acid, and a partially burned bottle of "Heet," a fuel line anti-freeze consisting of isopropyl alcohol—all known ingredients for methamphetamine production. Additionally, a detective found paraphernalia typically used to facilitate the ingestion of methamphetamine—three lighters, a spoon, matches, a spray bottle, and a razor blade—in the clothing and fanny pack Hausauer wore when he arrived at the hospital for treatment of his burns and smoke inhalation. Finally, the burned camper lacked power, propane, running water, and sewage facilities—facts which further raised suspicions that Hausauer used the camper to produce methamphetamine and not for living quarters.

¶7 At the close of the State's case-in-chief, Hausauer moved for a directed verdict of acquittal on grounds the State failed to prove the elements of the charged offense. Specifically, Hausauer argued the State presented no evidence as to any incriminating act or omission on his part, and as a result the jury had no basis for inferring his mental state. Hausauer also contended the evidence showed he legally possessed, for non-drug related purposes, the camper and all of the items found in it. The District Court denied Hausauer's motion for a directed verdict, and the trial proceeded.

¶8 At the close of arguments the District Court instructed the jury on several topics, including unanimity. The court instructed, "[t]he law requires the jury verdict in this case to be unanimous. Thus, all twelve of you must agree in order to reach a verdict whether the verdict be guilty or not guilty." Hausauer did not object to the court's general instruction, nor did Hausauer offer an alternative specific instruction on unanimity.

4

¶9 On June 29, 2004, the jury found Hausauer guilty of operating an unlawful clandestine laboratory in violation of § 45-9-132(3), MCA, and the District Court designated him as a persistent felony offender pursuant to § 46-18-501, MCA. On October 14, 2004, the District Court sentenced Hausauer to twenty years imprisonment at the Montana State Prison, with fifteen years suspended, for the offense. The court sentenced Hausauer to an additional twenty years with five years suspended due to his persistent felony offender status. The sentences run consecutively. Hausauer appeals from his conviction raising three issues. We affirm on Issue One, reverse and remand for a new trial on Issue Two, and decline to resolve Issue Three.

## STANDARDS OF REVIEW

¶10 We review a district court's denial of a motion for a directed verdict for an abuse of discretion. *State v. McGarvey*, 2005 MT 308, ¶ 13, 329 Mont. 439, ¶ 13, 124 P.3d 1131, ¶ 13 (citation omitted). We also review a trial court's denial of a challenge for cause for an abuse of discretion. *State v. Golie*, 2006 MT 91, ¶ 6, 332 Mont. 69, ¶ 6, 134 P.3d 95, ¶ 6 (citation omitted). A court abuses its discretion if it fails to excuse for cause a prospective juror whose actual bias is discovered during *voir dire*. *State v. Heath*, 2004 MT 58, ¶ 7, 320 Mont. 211, ¶ 7, 89 P.3d 947, ¶ 7 (citation omitted).

¶11 We review jury instructions in criminal cases to determine whether the instructions as a whole fully and fairly instruct the jury on the applicable law. *State v. Azure*, 2005 MT 328, ¶ 8, 329 Mont. 536, ¶ 8, 125 P.3d 1116, ¶ 8. A district court has broad discretion in formulating jury instructions, and our standard of review is whether the court abused that discretion. *Azure*, ¶ 8 (citation omitted).

# ISSUES

## ISSUE ONE

¶12    *1. Did the District Court abuse its discretion by denying the defendant's motion for a directed verdict of acquittal?*

¶13    At the outset, we determine whether the District Court abused its discretion when it denied Hausauer's motion for a directed verdict of acquittal. We do so because Hausauer requests disposition of this issue first, and were we to decide this issue in Hausauer's favor, we would not reach the remaining issues. We determine the District Court did not abuse its discretion in this regard.

¶14    Hausauer argues the State failed to present sufficient evidence to prove he possessed the mental state necessary to commit the charged crime, and therefore failed to prove an essential element of the charge. Hausauer contends the State presented no evidence of anything he did, or failed to do, from which the jury could infer his mental state. Further, he argues that all of the items found in the camper Hausauer occupied could be lawfully purchased and lawfully used for purposes other than drug production. As a result, the State failed to meet its burden of proof against Hausauer, and he should have been acquitted as a matter of law.

¶15    The State counters that the District Court properly submitted the charge of operating an unlawful clandestine laboratory to the jury. Sufficient evidence existed for the jury to infer Hausauer's mental state from surrounding circumstances, including the fact that Hausauer occupied the camper trailer which contained methamphetamine as well as items commonly used to manufacture methamphetamine. As a result, Hausauer's

culpability was a question of *fact*—not a question of law—appropriate for the jury's determination. We agree.

¶16 A directed verdict of acquittal is appropriate only when *no* evidence exists to support a guilty verdict. *State v. LaMere*, 2003 MT 49, ¶ 19, 314 Mont. 326, ¶ 19, 67 P.3d 192, ¶ 19 (citations omitted) (emphasis added). No abuse of discretion results from denial of a motion for a directed verdict of acquittal when the evidence presented is viewed in a light most favorable to the prosecution, and a rational trier of fact could find the essential elements of a crime beyond a reasonable doubt. *State v. Longstreth*, 1999 MT 204, ¶ 16, 295 Mont. 457, ¶ 16, 984 P.2d 157, ¶ 16 (citations omitted).

¶17 The State charged Hausauer with purposely or knowingly engaging in the procurement, possession, or use of chemicals, precursors to dangerous drugs, supplies, equipment, or a laboratory for criminal production or manufacture of dangerous drugs in violation of § 45-9-110, MCA. At the time the District Court denied Hausauer's motion for a directed verdict, the court had before it testimonial evidence given by the fire inspector and police investigators who found numerous items commonly used to manufacture methamphetamine in the charred remains of Hausauer's camper. Missoula Fire Marshall Nate Nunally testified he found two square metal cans which he suspected once contained fuel or paint thinner. Officers found lye, a packaging label for hydrochloric acid, and a partially burned bottle of "Heet." Police also found a cooler which contained dry ice and a bottle with white residue in it which State Crime Lab forensic chemist, Bahne Ann Kleitz, tested and identified as methamphetamine.

¶18 Each of the items found in Hausauer's camper *may* be used to manufacture methamphetamine. None of the items—whether in isolation, or collectively—conclusively proved Hausauer operated a clandestine lab where he manufactured methamphetamine. In fact, the exact contents of many of the found containers remain unidentified. However, the District Court correctly concluded the State's evidence was sufficient to allow the jury to weigh the State's case to determine whether the State met the burden of proof required to convict Hausauer. We conclude the District Court did not abuse its discretion when it denied Hausauer's motion for a directed verdict of acquittal because sufficient evidence existed to allow the jury to determine the question of Hausauer's guilt.

## ISSUE TWO

¶19 *2. Did the District Court abuse its discretion by denying Hausauer's motions to excuse two jurors for cause?*

¶20 The right to trial by an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. The bases for challenging prospective jurors for cause in a Montana criminal case are specified by statute. *See* § 46-16-115(2), MCA. A district court may take a challenge for cause in a criminal case when the court determines a juror has a state of mind in reference to the case or to a party that would prevent the juror from acting with "entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA. This Court determines challenges under § 46-16-115(2)(j), MCA, pursuant to both the statutory language and the totality of the circumstances presented. *State v.*

8

*Harville*, 2006 MT 292, ¶ 9, 334 Mont. 380, ¶ 9, ___ P.3d ___, ¶ 9, citing *Golie*, ¶ 8. Structural error occurs and requires reversal when a District Court abuses its discretion in denying a defendant's challenge for cause, the defendant uses a peremptory challenge to dismiss the biased juror, and the defendant ultimately exhausts all of the peremptory challenges available to him. *Heath*, ¶ 7 (citation omitted).

¶21 Hausauer contends two prospective jurors, B.M. and L.H., revealed biases during *voir dire* which prevented them from evaluating Hausauer's case impartially. Hausauer posits B.M. and L.H. should have been dismissed for cause as he requested. After the District Court denied his motions to dismiss, Hausauer used peremptory challenges to dismiss both jurors, and ultimately exhausted the six peremptory challenges available to him. Hausauer argues the District Court abused its discretion in denying his motions, and reversal for a new trial is required.

¶22 We agree that B.M. should have been dismissed for cause, and a new trial is required here. We therefore decline to address Hausauer's contentions with regard to L.H.

¶23 When *voir dire* questioning reveals a serious question about a prospective juror's ability to be fair and impartial, that question should be resolved in favor of excusing that juror. *State v. DeVore*, 1998 MT 340, ¶ 25, 292 Mont. 325, ¶ 25, 972 P.2d 816, ¶ 25 (citation omitted) (overruled in part on other grounds by *State v. Good*, 2002 MT 59, 309 Mont. 113, 43 P.3d 948). In determining whether a serious question arose regarding a prospective juror's ability to be fair and impartial, we review her *voir dire* responses as a whole. *Harville*, ¶ 10, citing *Golie*, ¶¶ 11-29 and *Heath*, ¶¶ 17-41. In reviewing a

challenge for cause based on a juror's state of mind we emphasize the juror's spontaneous, and usually initial, statements or responses. *Harville*, ¶ 9, citing *Golie*, ¶ 26.

¶24 During *voir dire*, B.M. was questioned about Hausauer's entitlement to a presumption of innocence. B.M. revealed that she believed Hausauer would not be standing trial "if there wasn't something connecting him to the crime." B.M. indicated she would only be convinced Hausauer was not guilty if evidence was presented that proved his innocence.

¶25 In *Devore*, we remanded for a new trial on facts similar to those presented here. ¶ 43 (overruled in part on other grounds). In that case, we concluded the trial court abused its discretion when it failed to dismiss two jurors who repeatedly responded to questions regarding their perception of the defendant's guilt in relation to the presumption of innocence they would be required to apply as jurors. Both jurors adhered to their belief that the defendant must be "guilty of something" or he would not have been on trial. Throughout repeated questioning, neither juror wavered from his belief that the defendant's presence in the courtroom carried weight, therein revealing their inability to afford the defendant a presumption of innocence. *DeVore*, ¶¶ 15-24 (overruled in part on other grounds).

¶26 Here, B.M.'s statements and responses to questions during *voir dire* revealed her inability to apply a presumption of innocence and objectively evaluate Hausauer's culpability in this case.

[Defense counsel]: [B.M.], what's your—your opinion about the fact that Mr. Hausauer's been charged and how do you feel about the presumption of innocence?

[B.M.]: I have to assume that there was—was some circumstance that—that the police department felt that there's reason for him to be here today.

[Defense counsel]: Okay. And what will you do with that?

[B.M.]: Listen to the testimony and decide if it's—if it's enough.

[Defense counsel]: Okay.

[B.M.]: If it's accurate.

[Defense counsel]: Now how are the scales tipped right now? You say there had to be some reason for him being here. I'm talking to you about the presumption of innocence. So we're—how are the scales tipped right now in your mind?

[B.M.]: Well, that's hard to—I guess my scales might be tipped a little towards—that there—there's condemning evidence.

[Defense counsel]: So –

[B.M.]: I don't think you get to this point without that.

[Defense counsel]: Okay. Now I'm going to tell you that the judge will say to you he's presumed innocent, and the charges are absolutely not evidence at all. When the judge tells you that, can you put aside your kind of sense to the contrary and go with what the judge says, or are you going to have some lingering doubt that's not good for Mr. Hausauer?

[B.M.]: Well, I—I—I guess I'd have to truthfully say I—I—I look forward to—to going through the evidence but, no, that there's—there's just a—an inkling that—that the police, the fire department, must have a pretty good idea that there's a link.

[Defense counsel]: Okay. . . . If you were on trial, would you want to be judged by a juror who has your attitude and feeling about this?

[B.M.]: Well, I . . . can listen to the evidence. I think it's hard to say that anybody doesn't think that—that this person is—is here because he just happened to be in a motor home.

[Defense counsel]: Well, I've conceded he wasn't on his way to church.

[B.M]: Yes, but I'm—I'm a fair person but—so what—what I want—so would I want me on my jury? No.

[Defense counsel]: Okay. And why is that?

[B.M.]: Just because what . . . I said. I . . . believe in . . . the police department's ability to investigate and I don't think if—if there wasn't enough circumstantial evidence to get him here he wouldn't be here today.

[Defense counsel]: Okay. So you . . . believe that the fact he's been charged has weight.

[B.M.]: Yes.

11

[Defense counsel]: And you have a hard time putting aside the presumption of innocence because you think that there's some evidence to the contrary at—at this juncture.
[B.M.]: Yes.

¶27 Defense counsel then moved for B.M.'s dismissal for cause, and the District Court asked the State for its position. State's counsel then attempted to contrast for B.M the level of proof necessary to establish probable cause to arrest Hausauer from the "proof beyond a reasonable doubt" standard the State would be required to meet at trial. However, State's counsel never articulated her question in a manner which was understandable to B.M., who remained confused about the distinction the State was trying to make. Ultimately, however, B.M. clearly said that because Hausauer was on trial for a crime, she did not presume he was innocent. Hausauer would need to show evidence of his innocence before B.M. could find him not guilty, as evidenced by her responses to the State's questions, below:

> [State]: You will hear the evidence from the officers and the other people at the scene, which is why we're here, but my duty is to prove to you beyond a reasonable doubt not just that he had a reason to be here but beyond a reasonable doubt that he did what I say he did to get here. Does that make sense? Is that something you can differentiate in your mind?
> [B.M.]: Well, I'm not—I'm still not sure I understand the question but—
> [State]: Me either so—
> [B.M.]: I . . . I know I can go through the evidence and—and differentiate that fairly but I—but I'm not going to lie to you. I'm going to tell you I—I don't think he'd be here if there wasn't something connecting him to the crime.
> [State]: And if I—let's say my evidence does not prove that to you. That somehow it comes out that he was on his way to Sunday school. Are you able to then—
> [B.M.]: Yes, I can do that.
> [State]: —find him not guilty?
> [B.M.]: I can—I can do that, yes.

The State objected to Hausauer's motion to remove B.M. for cause, and the District Court denied the motion. Hausauer used a peremptory challenge to dismiss B.M.

¶28 The State contends that even though B.M. "believed the scales [of justice] might be 'tipped' towards the existence of condemning evidence, she could listen to the evidence" before making an ultimate determination of Hausauer's guilt. We disagree. Taken as a whole, B.M.'s statements and responses during *voir dire* reveal she firmly believed there must be a good reason that Hausauer was on trial. The mere fact that he was charged with a crime, combined with her confidence in law enforcement, carried weight in her mind. B.M.'s statements and responses during *voir dire* revealed a serious question as to B.M.'s ability to afford Hausauer the presumption of innocence to which he was entitled.

¶29 We reiterate our preference for dismissal for cause when *voir dire* reveals a "serious question about a prospective juror's ability to be fair and impartial." *Harville*, ¶ 9, citing *State v. Richeson*, 2004 MT 113, ¶ 14, 321 Mont. 126, ¶ 14, 89 P.3d 958, ¶ 14. "While there may be some temporary inconvenience to the court and to the parties from excusing a juror for cause, that inconvenience is minor compared to the expense and inconvenience that results from having to retry criminal cases." *DeVore*, ¶ 25, citing *State v. Williams*, 262 Mont. 530, 539-40, 866 P.2d 1099, 1104-05 (1993) (overruled in part on other grounds by *Good*, 2002 MT 59, 309 Mont. 113, 43 P.3d 948). The District Court's failure to dismiss B.M. for cause was an abuse of discretion, and resulted in structural error which requires a new trial.

**ISSUE THREE**

¶30    *3. Did the District Court err by failing to properly instruct the jury on unanimity?*

¶31    In essence, Hausauer argues the District Court's general instruction on unanimity was insufficient because the complex statute under which Hausauer was charged created potential juror confusion regarding unanimity.  Specifically, the court failed to clarify that to convict him all twelve jurors must agree that particular criminal acts by Hausauer corresponded to particular elements of his crime.

¶32    We reverse Hausauer's case for a new trial on Issue Two, and therefore need not reach the merits of Hausauer's claim regarding the District Court's unanimity instruction. We recognize, however, that the District Court will on remand instruct a jury with regards to Hausauer's right to a unanimous verdict.  The right to a unanimous jury verdict is a fundamental right protected by Article II, Section 26 of the Montana Constitution. *State v. Vernes*, 2006 MT 32, ¶ 21, 331 Mont. 129, ¶ 21, 130 P.3d 169, ¶ 21, citing *State v. Weaver,* 1998 MT 167, ¶ 26, 290 Mont. 58, ¶ 26, 964 P.2d 713, ¶ 26.  "Unanimity means more than an agreement that the defendant has violated the statute in question; it requires substantial agreement as to the principal factual elements underlying a specific offense." *Vernes*, ¶ 21 (citation omitted).  On remand, the unanimity instructions should fully and fairly instruct the jury on the applicable law.  *State v. DuBray*, 2003 MT 255, ¶ 88, 317 Mont. 377, ¶ 88, 77 P.3d 247, ¶ 88 (citation omitted).

14

**CONCLUSION**

¶33    For the foregoing reasons, we reverse and remand for a new trial.


                                                        /S/ PATRICIA COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice John Warner concurs.

¶34    I reluctantly concur in the Court's reversal of this case because the District Court abused its discretion in not excusing the prospective juror, B.M., for cause. I do so, however, only because the record leaves an unanswered question concerning whether B.M. was a biased juror.

¶35    B.M.'s responses to questions from Hausauer's counsel do not necessarily show that she was biased in favor of the State or unwilling to accept and apply the presumption of innocence. As shown by the quotations from the record at ¶ 26 and ¶ 27 of the Court's opinion, B.M. did nothing more than express what is naturally in every venire man and woman's mind when subjected to questions on voir dire concerning the presumption of innocence. That is: "There must be some evidence of guilt because the defendant has

15

been charged. Otherwise, why would we all be here?" Further, B.M.'s thought was justified. There is enough evidence to charge Hausauer.

¶36 By the use of the leading question, counsel for Hausauer was able to get B.M. to agree that the fact Hausauer had been charged had weight.[1] However, neither counsel for the State, nor the court, determined whether B.M. could and would follow the law, once she was advised that the law unequivocally states that the charge against Hausauer is no evidence whatsoever of his guilt. Therefore, as noted by the Court at ¶ 23, a serious question about a prospective juror's ability to be fair and impartial is raised in this record and it had to be resolved in favor of excusing that juror. *DeVore*, ¶ 25.


/S/ JOHN WARNER

---

[1] Defense counsel's next question, "And you have a hard time putting aside the presumption of innocence because you think there is some evidence to the contrary at – at this juncture," actually indicates that B.M. had no bias in favor of the State. By having a hard time putting aside the presumption of innocence, B.M. embraced it.