

DA 06-0686

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 197

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JOHN BRAUNREITER,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DC 05-53
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              James B. Wheelis, Chief Appellate Defender; David Avery, Assistant Appellate Defender, Helena, Montana

       For Appellee:

              Hon. Mike McGrath, Attorney General; C. Mark Fowler, Assistant Attorney General, Helena, Montana

              Robert M. McCarthy, Silver Bow County Attorney; Samm Cox, Deputy County Attorney, Butte, Montana

Submitted on Briefs: March 5, 2008

Decided: June 5, 2008

Filed:

_____
                     Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    John Braunreiter (Braunreiter) appeals from the judgment entered in the District Court of the Second Judicial District, Silver Bow County, finding him guilty of burglary, a felony, in violation of § 45-6-204, MCA. Braunreiter raises numerous issues on appeal. We address only the District Court's denial of Braunreiter's challenge for cause of a potential juror. We reverse and remand for a new trial.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    The State charged Braunreiter with burglary, assault with a weapon, and intimidation in March of 2005. The State alleged that Braunreiter burglarized a residence and stole three rifles, a shotgun, and a vintage knife. The State further alleged that Braunreiter assaulted a woman with a hammer during the State's investigation of the burglary and threatened to kill her if she contacted law enforcement regarding Braunreiter's involvement.

¶3    Braunreiter filed a motion to sever the burglary charge from the assault and intimidation charges on August 30, 2005. The District Court granted the motion, and trial on the burglary charge commenced on November 16, 2005.

¶4    The prosecutor posed questions to the jury panel regarding the presumption of a defendant's innocence during voir dire. The prosecutor received no inappropriate responses from the panel. Braunreiter's counsel referred the panel to the prosecutor's discussion of the presumption of innocence during her opening remarks for voir dire. Braunreiter's counsel asked if "Mr. Braunreiter [has] to prove anything in this case?" Prospective juror Kremer replied that a defendant should testify to prove that he or she did not commit the crime charged. Braunreiter's counsel asked juror Kremer additional questions regarding the

2

presumption of innocence and a juror's obligation to follow instructions. Kremer maintained his belief that a defendant should be required to testify notwithstanding court instructions to the contrary. Braunreiter's counsel requested that the court dismiss Kremer for cause.

¶5 The District Court provided the State with an opportunity to examine Kremer before deciding Braunreiter's challenge for cause of prospective juror Kremer. The prosecutor questioned Kremer. Kremer's responses to the prosecutor's questions coincided with Kremer's earlier statements to Braunreiter's counsel. The District Court then discussed Kremer's obligations as a juror to follow the court's instructions. Kremer agreed to follow the instructions. The court denied the motion to dismiss Kremer for cause.

¶6 Braunreiter used a peremptory challenge to remove Kremer from the jury panel. Braunreiter exhausted his peremptory challenges. The jury convicted Braunreiter of burglary following a two-day trial. Braunreiter appeals the District Court's denial of his challenge for cause of Kremer.

## STANDARD OF REVIEW

¶7 We review a district court's decision to deny a challenge for cause to a juror for an abuse of discretion. *State v. Falls Down*, 2003 MT 300, ¶ 17, 318 Mont. 219, ¶ 17, 79 P.3d 797, ¶ 17. We will reverse the judgment and order a new trial if a court abuses its discretion in denying a defendant's challenge for cause, the defendant removes the challenged prospective juror with a peremptory challenge, and the defendant exhausts his peremptory challenges. *State v. Robinson*, 2008 MT 34, ¶ 7, 341 Mont. 300, ¶ 7, 177 P.3d 488, ¶ 7.

## DISCUSSION

3

¶8      Braunreiter argues that the District Court committed error when it declined to excuse for cause prospective juror Kremer. Braunreiter asserts that Kremer's "spontaneous and honest" responses revealed that Kremer could not act without bias with regard to Braunreiter's right to a presumption of innocence.

¶9      A defendant may challenge a juror for cause if the juror has a state of mind that prevents the juror from acting impartially and without prejudice to the substantial rights of the defendant. Section 46-16-115(2)(j), MCA. We review a prospective juror's voir dire responses as a whole when reviewing a challenge for cause. *State v. Hausauer*, 2006 MT 336, ¶ 23, 335 Mont. 137, ¶ 23, 149 P.3d 895, ¶ 23. We emphasize a prospective juror's spontaneous responses as we determine whether a serious question exists concerning the juror's ability to remain impartial. *Hausauer*, ¶ 23.

¶10      District courts need not remove a prospective juror for cause where the juror expresses concerns about remaining impartial but believes that he or she will fairly weigh the evidence. *Robinson*, ¶ 10. Courts should resolve serious questions about a prospective juror's ability to be fair and to remain impartial in favor of excusing the juror. *State v. DeVore*, 1998 MT 340, ¶ 25, 292 Mont. 325, ¶ 25, 972 P.2d 816, ¶ 25 (citation omitted) (overruled in part on other grounds by *State v. Good*, 2002 MT 59, 309 Mont. 113, 43 P.3d 948).

¶11      Section 46-16-114(2), MCA, allows district courts to examine potential jurors. A district court may clarify a juror's statements and ask questions in order to better ascertain whether a juror has biases. *Robinson*, ¶ 11. District courts should not attempt to rehabilitate

4

prospective jurors, however, by placing jurors in a position from which they will not disagree with the court. *Good*, ¶ 54. Coaxed recantations prompted by the trial court, or either counsel, fail to demonstrate that a prospective juror enters the trial without bias or prejudice. *Robinson*, ¶ 11.

¶12 The prosecutor discussed the presumption of innocence with the jury panel and had a brief exchange with prospective juror Kremer.

> PROSECUTOR: So if I were to ask you folks right now, without hearing any evidence at all, is the defendant guilty or innocent, what do you folks have to say?
>
> KREMER: Innocent.
>
> PROSECUTOR: . . . [a]nd if we show to you beyond a reasonable doubt and we show you the facts and the circumstances such that Mr. Kremer has no doubt in his mind, what would you return a verdict of then, Mr. Kremer?
>
> KREMER: If you could prove that he was guilty, I would say guilty, yeah.

¶13 Braunreiter's counsel, after referring the jury panel to the prosecutor's discussion of the presumption of innocence, asked the jury panel if "Mr. Braunreiter [has] to prove anything in this case?"

> KREMER: Well, [Braunreiter] has been charged. He has to prove he didn't do it.
>
> * * * *
>
> DEFENSE COUNSEL: Do you feel, Mr. Kremer, then, that every defendant who is charged needs to get up there and explain why he has been charged?

KREMER:  That's right.

DEFENSE COUNSEL:  You do?

KREMER:  (Nods head.)

DEFENSE COUNSEL:  So if the defendant chose not to take the stand, standing under his constitutional right to not incriminate himself should any testimony he would give be incriminating, you would think that he needs to get up here and explain himself; is that right?

KREMER:  Right.

DEFENSE COUNSEL:  So even if the Court were to instruct you that you should not hold a defendant's choice not to testify against him, you still believe that it would be appropriate for him to get up there and testify?

KREMER:  He doesn't have to if he doesn't want to.  That's his choice.  But I feel that he should get up and do it.

DEFENSE COUNSEL:  If he chose not to testify, you would take that into account in considering the - -

KREMER:  I would have to hear all the evidence first.

¶14   Braunreiter's counsel challenged juror Kremer for cause.  The District Court provided the State with an opportunity to voir dire Kremer before deciding Braunreiter's challenge.

PROSECUTOR:  Mr. Kremer, you understand that the judge, at the end of the trial, is going to tell you how to do your deliberations; is that correct?

KREMER:  Right.

PROSECUTOR:  If the judge tells you that, if the defendant does not testify and exercises his right not to testify, which everybody here is able to, that you are not to consider that, could you set that aside?

KREMER:  Probably.

6

PROSECUTOR: If the judge tells you that you are not to consider it, you can set that aside and not let that enter into your deliberations?

KREMER: No.

The State then asked the court to deny Braunreiter's challenge for cause of juror Kremer.

¶15 The District Court directly addressed Kremer.

THE COURT: Mr. Kremer, at the end of this, if you are selected for this jury, I'm going to tell you the law. And I'll explain the law, and it's not what you see on [television]; it's not what you hear elsewhere. It's what I tell you. Will you be able to follow that law?

KREMER: Sure.

THE COURT: Regardless of what you heard elsewhere?

KREMER: Right. I could follow the law.

The District Court denied Braunreiter's challenge for cause of prospective juror Kremer.

¶16 Juror Kremer's initial responses to the prosecutor's questions raised no concerns with regard to his ability to perform as a juror without prejudice to Braunreiter's rights. We must examine, however, Kremer's responses as a whole. *Hausauer*, ¶ 23. Furthermore, we emphasize a prospective juror's spontaneous response when reviewing a challenge for cause. *Hausauer*, ¶ 23.

¶17 Kremer's spontaneous response to a question that Braunreiter's counsel had posed to the entire jury panel raised serious questions regarding Kremer's ability to act without prejudice to the presumption of innocence and Braunreiter's right to refrain from testifying. Braunreiter's counsel and the prosecutor provided Kremer with opportunities to clarify his

7

position.  Kremer's responses to these follow-up questions failed to alleviate the serious concerns that arose from his earlier statements.

¶18    The Dissent faults the prosecutor and Braunreiter's counsel for asking unclear questions.  Dissent, ¶¶ 27-30.  The Dissent asserts that these unclear questions failed to shed light on Kremer's state of mind regarding Braunreiter's right to refrain from testifying and the presumption of innocence.  Dissent, ¶ 30.  The Dissent contends, for example, that Kremer merely evinced a preference to hear directly from the defendant when Kremer stated "He doesn't have to [testify] if he doesn't want to.  That's his choice.  But I feel that he should get up and do it."  Dissent, ¶ 28.  Kremer's repeated statements regarding Braunreiter's rights, however, belie the Dissent's characterization of Kremer's position as a mere preference.

¶19    Kremer set himself apart from the other members of the jury panel when Braunreiter's counsel asked the panel whether "Mr. Braunreiter [has] to prove anything in this case?" Kremer stated that "[Braunreiter] has been charged.  He has to prove he didn't do it."  This statement amounts to more than a mere preference to hear a defendant's testimony. Braunreiter's counsel next asked Kremer if "every defendant who is charged needs to get up there and explain why he has been charged?"  Kremer's unequivocal answer, "That's right," to this straightforward question, raised a serious question about Kremer's ability to perform as a juror without bias against Braunreiter's right to refrain from testifying and the presumption of innocence.

¶20    Kremer's responses to the follow-up questions asked by Braunreiter's counsel and the prosecutor, when viewed in isolation, arguably present an unclear picture of Kremer's position with regard to Braunreiter's rights. Dissent, ¶ 30. These statements followed on the heels, however, of unequivocal answers from Kremer that raised serious questions about Kremer's ability to remain impartial. The colloquy between Kremer and Braunreiter's counsel and the prosecutor that took place after Kremer's unequivocal responses failed to resolve these serious questions.

¶21    Kremer's statements reveal the kind of fixed state of mind that this Court repeatedly has deemed appropriate for a dismissal for cause. We concluded in *DeVore*, for example, that the prospective jurors' adherence to the belief that the defendant "is guilty of something" demonstrated a serious question about the jurors' ability to remain impartial and to afford properly the presumption of innocence to the defendant. *DeVore*, ¶ 24. Likewise, we examined in *Good* two prospective jurors and their predisposition to favor the testimony of a teenage victim of sexual abuse. *Good*, ¶¶ 12, 53. We concluded that the jurors' adherence to their respective positions demonstrated a serious question about the jurors' abilities to act with impartiality. *Good*, ¶ 53.

¶22    We also determined in *Good* that the jurors' recantations, given after the district court delivered a "civics speech" on the presumption of innocence, shed no light on the jurors' abilities to remain impartial. *Good*, ¶ 55. We again cautioned district courts to refrain from rehabilitation efforts that place jurors in a "position where they will not disagree with the court." *Good*, ¶ 54.

9

¶23     The prospective jurors in *Falls Down* and *Robinson*, by contrast, admitted having doubts about the defendant's innocence, but gave responses that allowed the district court reasonably to conclude that they could set aside their concerns. The prospective jurors in *Falls Down* did not express fixed opinions about the defendant's guilt. *Falls Down*, ¶¶ 27, 30, 32, 35. The potential jurors also indicated that they had the ability to follow the court's instructions or remain fair and impartial in the absence of the type of district court questioning that we warned against in *Good*. *Falls Down*, ¶¶ 25, 28, 31, 33. Similarly, we deferred in *Robinson* to the trial court's decision not to excuse the juror for cause when the court had considered the juror's conflicting statements regarding the presumption of innocence. *Robinson*, ¶ 13. We determined that the trial court's questioning of the prospective juror constituted an attempt to clarify the juror's thoughts and did not lead to a coaxed recantation. *Robinson*, ¶ 14.

¶24     Kremer stated that he would require Braunreiter to testify to prove his innocence even after rehabilitation attempts by Braunreiter's counsel and the State. Kremer relinquished this position only after the District Court informed him that the law "[is] not what you see on [television]; it's not what you hear elsewhere. It's what I tell you." Kremer's response, "Sure," in light of his previous responses and coming directly after the court's admonition, leaves a serious question as to Kremer's ability to perform impartially as a juror. *Good*, ¶ 55. We hold that the District Court could not conclude reasonably that Kremer had a state of mind that would allow him to perform as a juror free from prejudice to Braunreiter's right to refrain from testifying and to the presumption of innocence.

10

¶25 The District Court abused its discretion when it denied Braunreiter's challenge for cause of prospective juror Kremer. Braunreiter removed Kremer with a peremptory challenge and exhausted his peremptory challenges. We reverse the judgment and remand for a new trial. *Robinson*, ¶ 7.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

Justice Jim Rice, dissenting.

¶26 The Court reverses Braunreiter's conviction by concluding that Juror Kremer's responses "demonstrate a fixed state of mind prejudicial to the presumption of innocence and Braunreiter's right not to testify." I disagree with this conclusion.

¶27 Kremer's initial, spontaneous responses clearly demonstrate a proper understanding of the presumption of innocence and the burden of proof and should be given more weight than the later answers he gave to uncertain questions, the meaning of which was less than clear until the District Court clarified his answers. At that point Kremer again clearly endorsed the proper legal principles, as demonstrated below.

¶28 In ¶ 13, the Opinion quotes the question from defense counsel, "So even if the Court were to instruct you that you should not hold a defendant's choice not to testify against him,

11

you still believe that it would be appropriate for him to get up there and testify?" The thrust of this question is far from clear, but it appears that defense counsel is asking, that even if a defendant has a right not to testify, does the juror feel it would nonetheless "be appropriate" for the defendant to do so. Kremer gives a perfectly correct response to this two part question as framed: (First part—right not to testify) "He doesn't have to if he doesn't want to. That's his choice." (Second part—but do you feel the defendant should testify?) "I feel he should get up and do it." Defense counsel essentially asked Kremer whether he personally preferred to hear from the defendant directly. Kremer gave a precise answer to the particular question posed, indicating that while the defendant had the right not to testify, he believed that the defendant should. It is commonly assumed that jurors would like to hear from the defendant personally and, given the phrasing of this question, it should come as no surprise that Kremer's answer reflected this common assumption. However, his expression of this common view was not an error about the right of the defendant not to testify, and even if incorrect, it is not unusual for jurors to come to the process with an incorrect or mistaken view. The critical concern is whether they are willing to lay their personal view aside and apply the law as given. Kremer clearly was.

¶29    The Court maintains that "Kremer maintained that he would require a defendant to testify notwithstanding court instructions to the contrary." However, I do not believe that the record supports this statement. This conclusion is based on the question and answer quoted in ¶ 14 of the Opinion, but the Court's quote does not reveal the entire context. First, the prosecutor asked Kremer a double-negative question: "If the judge tells you that you are not

12

to consider [the defendant's failure to testify], you can set that aside and not let that enter into your deliberations?" The meaning of Kremer's answer to these double-negatives—a simple "No"—was not clear but, without asking any clarifying questions, the prosecutor then immediately stated, "I ask that he not be excused, Your Honor." The District Court, apparently noticing the lack of clarity, asked two clarifying questions about Kremer's willingness to follow the instructions and Kremer gave strong, clear answers to both, explaining he would follow the law—consistent with the proper answers he gave initially.

¶30 I do not believe the answers of the juror here rise to the level of a "serious question about a prospective juror's ability to be fair and impartial," which we noted in *Hausauer*, ¶ 29. The prospective juror's answers in *Hausauer* were clearly incorrect from the beginning, and were surrendered only in virtually the last question she was asked, after extensive questioning. *Hausauer*, ¶¶ 26-27. In contrast, Kremer gave initially correct answers, followed by unclear answers to unclear questions from both counsel, and then gave correct answers to clear questions by the Court. To be sure, the cold record could leave some doubt, depending on what one draws from the transcript, but this is why we have held "[b]ecause the trial court is best able to observe the jurors and to decide the potential for prejudice . . . the trial court has *significant latitude* when ruling on such matters. [Citation omitted.] This Court gives the trial court's determination *considerable weight* and will defer to that determination . . . ." *State v. Hatten*, 1999 MT 298, ¶ 28, 297 Mont. 127, ¶ 28, 991 P.2d 939, ¶ 28 (emphasis added). Here, it is not clear to me that Kremer had a bias or

13

improper view which he would not surrender. I would thus defer to the observations of the District Court and conclude that it did not abuse its discretion.

¶31 I would affirm.

/S/ JIM RICE